WEINBERG v. LADD.

1. FRAUD — ANIMALS, EXCHANGE OF — WARRANTIES — EVIDENCE — QUESTION FOR JURY.

In an action for fraud in the exchange of horses, where it appeared that defendant represented that his horses were sound, that at the time of the trade one of the defendant's horses was discharging at the nostril and one had a lump under its jaw, both symptoms of glanders, that shortly after the trade an application of the proper tests showed them to be afflicted with the disease, and there was evidence of veterinarians that the length of time in which the disease develops varies from a short time to two years, it was a question for the jury whether the horses were afflicted with glanders at the time of the sale.[1]

2. SAME.

Where the seller of horses represents that they are sound, but they are afflicted with glanders, an incurable disease, an action of fraud lies in favor of the buyer, and it is unimportant whether the disease is in its incipient stage, or farther developed.

3. SAME—WARRANTIES—PUBLIC POLICY—INSTRUCTIONS.

An instruction as to the duty of owners of horses threatened with glanders that such owners owed the duty, in the interest of public policy and protection of the public, as well as the parties, to state the conditions squarely, and that if the owner of a team of horses or one horse had good reason to believe that it was suffering from an incurable disease, and one that was dangerous to the public, he was not permitted to sell that team or horse and take his chances on any person being injured and upon the public being injured, was correct, as it but declared the public policy of the State under 2 Comp. Laws 1915, §§ 7311, 7312, and 3 Comp. Laws 1915, § 15536.

4. SAME.

Any error in instructing the jury, in an action for fraud in the exchange of horses, that the owner of a team of

---

[1] On the question as to whether statements made without knowledge of their falsity will afford ground for an action for fraud, see notes in 7 L. R. A. (N. S.) 646, 18 L. R. A. (N. S.) 379.

horses owed the duty, in the interest of public policy and protection of the public, as well as of the parties, to state the conditions fairly and squarely, and that if such owner had good reason to believe that his horses were suffering from an incurable disease and one that was dangerous to the public he was not permitted to sell that team and take his chances on any person or the public being injured, is harmless where defendant admitted representing the horses to be sound, and the court would have been justified in taking such question from the jury.

5. SAME.

If representations of fraud in the exchange of horses are made and relied upon by the other party to his injury and they are false, an action for fraud may be maintained, even though such representations were made in good faith.

Error to Wayne; Mayne, J., presiding. Submitted October 8, 1917. (Docket No. 49.) Decided December 27, 1917.

Case by Samuel Weinberg against Frank G. Ladd and another for fraud and deceit. Judgment for plaintiff. Defendants bring error. Affirmed.

*Rowland M. Connor,* for appellants.

*Harry H. Wait,* for appellee.

FELLOWS, J. The parties to this case traded horses in June, 1913. Plaintiff brings this action for fraud and deceit growing out of the trade, and to support his claim produced testimony tending to show that he is a dealer in horses and had a considerable number on hand; that defendants came to him claiming to be partners and desirous of exchanging a light team for a larger one, their small team being unsuitable for their work of excavating; that they picked out a heavy team, and he went out to see their team; that it was a good-appearing team, but that he noticed a discharge from the nostril of one of the horses, and in-

quired the cause, and was informed that the horses had been out in the rain, that defendants had just got them from the country, and that the one horse had taken cold, as horses were liable to do under such circumstances. He was told that the horses were sound, and claims that, relying on such representation, he made the trade, giving his heavy team for defendants' lighter one and $125 in cash. He gave testimony to the effect that a short time thereafter, through a party to whom he sold the light team, he became informed that the horses were afflicted with glanders, and that he took them back, and quarantined them by direction of the State live stock sanitary commission; that tests were made by veterinarians located in Detroit and veterinarians representing the commission, and it was established that they were afflicted with the disease of glanders, a communicable, incurable disease, difficult to detect and capable of being established only by certain tests known to veterinary surgeons; and that, after keeping them a time in quarantine at considerable expense to himself, they were killed by order of the live stock sanitary commission.

Plaintiff recovered a judgment of $350, and defendants sue out this writ of error. They insist that the court should have directed a verdict in their favor on the ground that there is no evidence that the horses were afflicted with the glanders at the time of the sale. An examination of the record clearly discloses that this was a question for the jury. The veterinarians called by plaintiff, and there were several of them, gave testimony tending to establish that the length of time in which the disease develops varies from a short time to two years. The testimony of one of the defendants called by plaintiff under the statute shows that at the time of the trade one of the horses was discharging at the nostril, and one of

them had a lump under its jaw, both symptoms of the glanders. This testimony, coupled with the fact that shortly after the trade an application of the proper tests showed them to be afflicted with this disease, took this question to the jury.

The testimony of the plaintiff and defendant agreed that before the trade defendant represented the horses to be sound. If they had the glanders, they were not sound, and the court upon the admitted facts would have been justified in instructing the jury that, if the horses had the glanders, plaintiff was entitled to recover. The undisputed testimony is to the effect that glanders is an incurable disease. If so, it was unimportant whether the disease was in its incipient stage or farther developed.

Error is assigned on a portion of the charge in which the court informed the jury as to the duty of owners of horses threatened with glanders, telling them, in effect, that such owner owed the duty, in the interest of public policy and protection of the public, as well as of the parties, to state the conditions fairly and squarely; "in other words, the owner of a team of horses, or one horse, that he has a good reason to believe is suffering from an incurable disease, and one that is dangerous to the public, cannot sell—is not permitted to sell—that team and take his chances on any person being injured, and upon the public being injured." The court went no farther upon this subject than the declared public policy of the State found in sections 7311, 7312, 2 Comp. Laws 1915, and section 15546, 3 Comp. Laws 1915. But, as we have already stated, defendant admitted representing the horses to be sound, and the court would have been justified in taking that question from the jury. Under the circumstances he cannot complain of these instructions.

Nor is it a defense that defendant believed the rep-

resentations to be true. If representations of material facts are made and are relied upon by the other party to his injury, and they are false, an action for fraud may be maintained, even though such representations were made in good faith. *Aldrich* v. *Scribner*, 154 Mich. 23 (117 N. W. 581, 18 L. R. A. [N. S.] 379); *Power Specialty Co.* v. *Power Co.*, 190 Mich. 699 (157 N. W. 408).

We have examined the other assignments of error, and find them to be without merit.

The judgment is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.