CLARENCE S. KIRKLAND *vs.* SIDNEY W. LAWRENCE.

Suffolk.    October 10, 1935. — October 31, 1935.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Deceit. Evidence,* Relevancy and materiality.

A finding that a seller of land on a pond brought about the sale by deceiving the purchaser, and a verdict for the plaintiff in an action of deceit, were warranted by evidence that the defendant, knowing that the plaintiff desired property with boating, bathing and fishing rights, told him that those rights went with such land, and later, upon the plaintiff's attorney's saying that his examination of the title disclosed no limitations upon the use of the land and asking if there were any, told the attorney that he knew of none, though to the defendant's knowledge the pond was a reservoir and not open to the use desired by the plaintiff; and a finding was not required that either the plaintiff or his attorney was negligent in not making such further inquiry as would have revealed the truth.

In an action for deceit in the sale of land, certain evidence as to modifications of the contract of sale by reduction of the purchase price and the amount of a mortgage back was competent as part of the history of the transaction.

CONTRACT OR TORT. Writ dated March 11, 1929.

The action was tried in the Superior Court before *Fosdick,* J. There was a verdict for the plaintiff in the sum of $3,500. The defendant alleged exceptions.

*J. M. Graham,* (*R. Clayton* with him,) for the defendant.
*J. B. Abrams,* (*H. Yorra* with him,) for the plaintiff.

QUA, J. This is an action for deceit in the sale by the defendant to the plaintiff of a tract of land bordering on Long Pond in the town of Falmouth. The plaintiff had a verdict.

There was evidence tending to show these facts: In December, 1925, the plaintiff went from Boston to Falmouth and interviewed the defendant. The plaintiff told the defendant he was not interested in any property that did not have a water front with water rights for boating, bathing and fishing, because it was hard to sell property that

did not have those privileges. The defendant said he owned a piece on Long Pond of about twenty-five acres that had all those privileges, and that had "been in the family" for twenty years. Between four and five o'clock, at dusk, they examined the property by walking five or six hundred feet down a path through the woods. The defendant pointed out the "barrier lines" and told the plaintiff that there were about a thousand feet on the pond, that the pond was about a mile long and from an eighth of a mile to a quarter of a mile wide and that there was an island in it where they "used to" fish. The plaintiff could see it was a beautiful pond, though they did not go as far as the shore. He told the defendant he would build summer cottages on the water front and inquired of the defendant as to the cost of a road from the pond to the street. After this visit, and while the agreement for purchase was being written out by a third person in the presence of the parties, the plaintiff told the writer "to put in . . . that there was boating, bathing and fishing rights in the pond." He replied that "'bounded by Long Pond' . . . covers all those rights that go with the pond." Long Pond was one of seventy-two ponds in the town of Falmouth. The plaintiff had never heard of it before. He did not know that it was a reservoir for the town water supply and that it was not open for boating, bathing or fishing. The defendant knew this, but did not mention it. The plaintiff made the purchase in reliance upon the defendant's statements as to the water rights.

There was further evidence that the plaintiff employed an attorney to examine the title. The deeds offered by the defendant stated that the premises were "subject to such limitations as to use as may be legal and applicable." The plaintiff's attorney told the defendant he had seen no record in the registry that limited the use and asked the defendant what limits or restrictions there were. The defendant replied that he did not know of any. The attorney did not know that the pond was a reservoir. His examination of the title did not disclose that fact.

Crucial parts of this evidence were sharply contradicted,

but it was for the jury to say whom they would believe. If they believed the plaintiff and his attorney, they might well find that the defendant brought about the sale by intentionally deceiving the plaintiff as to the availability of the land for the purpose for which the defendant knew the plaintiff was buying it. *Nash* v. *Minnesota Title Ins. & Trust Co.* 163 Mass. 574. *Alpine* v. *Friend Bros. Inc.* 244 Mass. 164, 167, and cases cited. The jury were not required as matter of law to find that either the plaintiff or his attorney was negligent, in view of what the defendant had told them, in not making such further inquiry as would have revealed the truth. *David* v. *Park*, 103 Mass. 501. *Durkin* v. *Cobleigh*, 156 Mass. 108. *Burns* v. *Dockray*, 156 Mass. 135. *Brady* v. *Finn*, 162 Mass. 260. *Rollins* v. *Quimby*, 200 Mass. 162. *Charbonneau* v. *Rokicki*, 278 Mass. 524. *Sheffer* v. *Rudnick*, 291 Mass. 205, 210–211. It follows that the defendant's motion for a directed verdict in his favor was properly denied.

There was no error in refusing an instruction which in part required the court to rule that "There is no evidence . . . that any means was used by the vendor to induce the plaintiff to forego inquiry as to the condition, situation or adaptation of the premises in question." Without pausing to inquire whether this request was otherwise sound, we think there was such evidence in the statement made by the defendant to the plaintiff's attorney. It was not error to refuse an instruction that the only material misrepresentation was that the waters were available for use. There was evidence of other misrepresentations which could not be pronounced wholly immaterial to the case. Full instructions were given as to the proper basis of liability.

There is nothing in the defendant's exceptions to the admission of evidence tending to show that the acreage of a second lot of land, which was included in the same purchase with the Long Pond lot, was discovered to be less than the defendant had stated and that thereupon the agreement was modified by reducing the total purchase price and correspondingly reducing the amount of the mortgage back which the plaintiff gave to the defendant on the

Long Pond lot. The modified agreement was later fully performed. It is immaterial whether or not there was any consideration for the change in the preliminary agreement. The case was tried and submitted to the jury as an action of tort for deceit in a completed sale, not as for breach of a contract to sell. All this evidence was competent as part of the history of the transaction by which the jury found the plaintiff was defrauded.

*Exceptions overruled.*