Richard M. TRAVERS

v.

Edward T. SPIDELL et al.

No. 95–527–Appeal.

Supreme Court of Rhode Island.

Sept. 13, 1996.

Margaret-Mary Hovarth, Pawtucket, for Plaintiff.

William Jacobson, Providence, Patrick T. Conley, East Providence, for Defendant.

## OPINION

PER CURIAM.

This appeal requires us to determine whether a general merger-and-disclaimer clause in a real estate purchase-and-sale agreement (P & S) bars a fraud claim based on the sellers' alleged misrepresentations concerning the presence of a well on the property. A Superior Court justice entered judgment in favor of the selling defendants, Edward T. and Christine Spidell (the Spidells), after he granted a summary-judgment motion filed by them. Counsel for the parties came before us after we issued an order to the plaintiff, Richard M. Travers, to show cause why this appeal should not be decided summarily. Having listened to the parties' oral presentations and considered their written memoranda on the merits of this appeal, we believe that the issues raised can be decided without further briefing and argument.

The plaintiff bought a home located on property in Glocester, Rhode Island, owned by the Spidells. The plaintiff claims that before his purchase Mr. Spidell walked the property with him and pointed out the land's boundaries. Relying on Mr. Spidell's representations, plaintiff concluded that the home's well was located on the property. However, after he purchased his new home, plaintiff learned that the well was actually located on a neighbor's property; indeed, the neighbor sued to have plaintiff remove the well.

After having viewed the property with Mr. Spidell, plaintiff signed the P & S. It contained the following merger-and-disclaimer clause:

> "We, the parties hereto, each declare that this instrument contains the entire agreement between the parties, and that it is subject to no understandings, conditions or representations other than those expressly stated therein."

An additional provision made the P & S subject to a well inspection. In context this provision served to corroborate the earlier representations that allegedly placed the well within the boundary lines of the property to be purchased.

The plaintiff sued the Spidells for damages, alleging that they "knowingly or recklessly" misrepresented the well's location. In due course the Spidells moved for summary judgment, arguing that the above merger-and-disclaimer clause barred the fraud claim because it rendered legally irrelevant all alleged "misrepresentations" made before the P & S was signed. A Superior Court justice agreed and granted the motion.

We examine de novo the grant of a summary-judgment motion, applying the same criteria as the court below. *See Marr Scaffolding Co. v. Fairground Forms, Inc.,* 682 A.2d 455, (1996). In fine, summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, reveals no genuine issue of material fact and the moving party shows an entitlement to judgment as a matter of law. *See, e.g., DiQuinzio v. Panciera Lease Co.,* 641 A.2d 50, 54 (R.I.1994).

Although fraud "vitiates all contracts," *LaFazia v. Howe,* 575 A.2d 182, 185 (R.I.1990), a party who has been induced by fraud to enter into a contract can also elect to affirm the contract and sue for damages in an action for intentional deceit or misrepresentation. *See Halpert v. Rosenthal,* 107 R.I. 406, 412, 267 A.2d 730, 733 (1970); *see also Bloomberg v. Pugh Brothers Co.,* 45 R.I. 360, 364, 121 A. 430, 431 (1923). To establish a prima facie damages claim in a fraud case, the plaintiff must prove that the defendant "made a false representation intending thereby to induce plaintiff to rely thereon" and

that the plaintiff justifiably relied thereon to his or her damage. *Cliftex Clothing Co. v. DiSanto,* 88 R.I. 338, 344, 148 A.2d 273, 275 (1959); *accord LaFazia,* 575 A.2d at 185.[1]

■ Invoking *LaFazia,* defendants assert that, given the merger-and-disclaimer clause, even if Mr. Spidell had made deliberate misrepresentations, plaintiff's reliance thereon could not have been justifiable as a matter of law. We disagree.

The plaintiffs in *LaFazia* sued the defendants for having failed to make a final payment due on a promissory note that had been given in consideration for the defendants' purchase of a delicatessen. 575 A.2d at 183–84. The defendants counterclaimed that they had been induced to buy the business by false representations made by the plaintiffs regarding the delicatessen's past revenues and profitability. *Id.* at 184. The defendants had reviewed the business's tax returns before the sale and voiced some concern over the low profits. *Id.* at 183. After having been told by the plaintiffs that the business was more remunerative than the records suggested, the defendants agreed to buy the delicatessen and signed a contract with the following language:

> "9. The Buyers *rely on their own judgment as to the past, present or prospective volume of business or profits of the business* of the Seller and does [*sic* ] not rely on any representations of the Seller with respect to the same.
>
> "10. No representation or warranties have been made by the Seller, or anyone in its behalf, to the Buyers as to the condition of the assets which are the subject of this sale, and it is understood and agreed that said assets are sold 'as is' at the time of sale.
>
> " \* \* \*
>
> "12. This agreement constitutes the entire agreement between the parties hereto." (Emphasis added.) *Id.*

We upheld summary judgment for the plaintiffs/sellers, concluding that these disclaimer-and-merger clauses *explicitly* precluded the defendants/buyers "from asserting that plaintiffs made material misrepresentations regarding the profitability of the business. The clauses prevent defendants from successfully claiming reliance on prior representations." *Id.* at 185.

The instant case, however, is not cut from the same cloth as *LaFazia.* In contrast to the situation in *LaFazia,* we are not confronted here with specific merger and disclaimer language "regarding the very matter concerning which" plaintiff claims he was defrauded—namely, the location of the well. *See id.* at 186. Since this general merger-and-disclaimer clause specifically addresses neither the well's location nor the boundaries of the property, it is more akin to the broad language of the *Bloomberg* proviso:

> " 'The foregoing contains the whole agreement between the parties to this contract and they, and each of them, shall be estopped from asserting, as an inducement to make said contract, any misrepresentation upon the part of either of the parties hereto, or any agent or servant of either of the parties hereto. Should any such misrepresentation be alleged in any suit at law or proceeding in equity, then either of the parties hereto may plead this contract in bar thereof.' " 45 R.I. at 362–63, 121 A. at 430.

*Bloomberg* held that this general-merger clause did not shield the defendant from fraud liability when the plaintiff alleged that the defendant's false promise to throw some "trucking business" his way induced him to buy a truck. *See id.* at 362, 364, 121 A. at 430–31. For the same reason the general merger and disclaimer language used in this P & S does not, as a matter of law, bar the fraud claim against the Spidells. *Cf. LaFazia,* 575 A.2d at 185–86 (noting that if the clause there "had been \* \* \* general and had not provided that the buyer was to rely solely on his own judgment regarding the past, present, or prospective volume of the

---

1. A misrepresentation is "any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts."

*Halpert v. Rosenthal,* 107 R.I. 406, 413, 267 A.2d 730, 734 (1970) (quoting Restatement *Contracts* § 470 at 890–91).

business, the trial justice's ruling would have been inappropriate").

■ The defendants argue that the plaintiff was negligent in failing to exercise his right under the P & S to inspect the well and that the plaintiff could have ascertained the well's true location by examining the tax assessor's plat map. But these contentions ignore settled law that when a person claims to own certain property, such representations may be justifiably relied upon by a plaintiff who is transacting business with that person without first investigating or verifying the accuracy of such a claim. *See, e.g., Hunt v. Barker,* 22 R.I. 18, 20, 46 A. 46, 46 (1900) (a plaintiff who had been induced to enter into a contract to install a heating apparatus for defendant's home on the basis of defendant's false home-ownership claim could maintain an action for deceit even though the land's true ownership status might have been ascertained by an examination of the title records).

Accordingly, we sustain the plaintiff's appeal, vacate the decision below granting summary judgment for the defendants, and remand the papers in this case to the Superior Court for further proceedings consistent with our decision.